**Peter Gabor KALMAN, Plaintiff,**

**v.**

**KIMBERLY-CLARK CORPORATION, Defendant.**

**Civ. A. No. 78–C–721.**

United States District Court, E.D. Wisconsin.

Aug. 17, 1982.

---

Robert Clemency, Michael, Best & Friedrich, Milwaukee, Wis., for plaintiff.

Michael J. McGovern, Quarles & Brady, Milwaukee, Wis., Leonard Santisi, Curtis, Morris & Safford, New York City, for defendant.

DECISION and ORDER

TERENCE T. EVANS, District Judge.

A four-day court trial in this patent validity-infringement case ended on April 2, 1982. The case was very ably presented by lead counsel for the parties, I. Irving Silverman for the plaintiff and Leonard J. Santisi for the defendant. The following constitutes my findings of fact and conclusions of law.

There are two issues in the case. One concerns the validity of the patent in suit, U.S. Patent 3,471,017. If it is valid, the second question is whether the accused Berlyn continuous filters model nos. CF3539 and CF4549 owned and used by the Kimberly-Clark Corporation infringe the patent's process claims numbered 1, 3, and 15 and its apparatus claims numbered 18, 20, 23, and 25.

The plaintiff Peter Gabor Kalman is a citizen of the United Kingdom. He resides in London, England. Kalman is the patentee and owner of the patent in suit. His corporation, Process Developments Ltd. of London, manufactures and sells filter devices constructed according to the teachings of the patent. Kalman has also licensed Mobil Oil Corporation to make and use filter devices under the patent in the United States. The filter devices sold in the United States under the patent are sold under the trademark "Autoscreen."

The defendant Kimberly-Clark Corporation of Neenah, Wisconsin manufactures, among other things, products from heat-softenable plastics which it obtains in bulk, feeds to apparatus which soften and extrude it through dies, spinnerets or the like. The heat softened plastic is filtered during the process. The end product is sheet material made of plastic.

*The Kalman Patent*

The patent in suit describes a filtering process and apparatus. It was issued on October 7, 1969 to Mr. Kalman based on an application filed June 20, 1967. The date of the invention is February 21, 1967, the filing date of Mr. Kalman's corresponding British patent application.

The Kalman patent has two independent claims, claims 1 and 18, the first directed to the method of the invention and the second to the apparatus of the invention. The invention provides a means of filtering molten plastic to remove contaminants while the plastic is being forced through a central bore toward a die or mold. The gist of the invention is the provision of a continuous filter device in the form of a "band or ribbon" for heat-softened flowing plastic.

The invention operates when a length of filter is passed across the flow of plastic. The filter is incrementally moved to bring fresh filter areas into the flow path and remove clogged filter areas from the path. Controlled temperature heat exchangers are positioned at the inlet and outlet ports through which the filter passes. The heat exchangers cause the formation of sealing plugs of rigid or semi-rigid plastic which always surround the filter ends and move with the filter. The plugs are continuously self-maintained or re-formed from the molten plastic to maintain seals as the filter moves. They prevent leakage without the need for high pressure sealing or extremely close tolerances during the operation of the device.

In the Kalman patent the filter is a roll of unsupported filter screening. Backup support for the screening is provided by a fixed breaker plate that is built into the enclosure and through which the filtered plastic passes after it has passed through the filter.

The Kalman patent discloses examples of the means by which the filter is moved continuously into and through the inlet port, across the stream of flowing plastics, and into and through the outlet port without stopping the flow of plastics and without stopping the operation of the extruder.

One of these procedures involves making the outlet port larger than the inlet port. As a consequence, the rigid or semi-rigid plug of plastic material in the outlet port is under greater hydrostatic pressure than the plug at the inlet port. Because the sealing plugs are connected to the filter, the pressure causes the plugs and filter to move together toward the outlet port. The movement slowly carries the sealing plug of the inlet port into the enclosure and expels the other one. The filter gradually moves across the stream of flowing plastics while the plastic is being filtered through the screening. The movement is accomplished without significant leakage because the sealing plugs are always being formed and maintained.

Another procedure for moving the filter ribbon involves increasing the forward movement of the filter by pulling at the emerging end of the ribbon with a direct external force. Similarly, the forwarding movement of the filter ribbon may be retarded by the application of a direct force to the ribbon at the inlet port.

Prior to the design and construction of the Berlyn devices of the type owned by the defendant, the Autoscreen devices were the only continuous filter devices available on the market.

The file history of the Kalman patent indicates no prosecution of the claims other than a minor amendment by the Examiner. With the minor amendment, the claims were allowed as filed. The application upon which the patent issued was filed with 43 claims including the independent process claim 1 and the independent apparatus claim 18. None of the claims were rejected by the Patent Office. No amendments to the application were made to distinguish the invention from an prior art. The Patent Office cited five U.S. patents in the Kalman patent application, but applied no art to the claims.

The language "band or ribbon" was never discussed or argued between the applicant and the Examiner, nor was there any discussion of the use of hydrostatic pressure for moving the filter or of the difference in size between the inlet and outlet ports. The Patent Office did not object to any of the claims in suit which do not include references to the movement of the filter by internal pressure or to ports of different sizes.

The Examiner's amendment inserted the phrase "heat-softened" before "substance," inserted the word "temperature" before "condition" and changed the word "slot" to the word "port" in Claim 1. Claim 18 was amended to insert the phrase "for filtering a heat-softened substance" after "device," to change "can be passed and" to "is passed and can be . . . ," and to insert after "substance" the phrase "and means to provide temperature conditions at said ports to form said plugs." The Examiner's amendment includes the statement, "The above amendments have been authorized by applicant's attorney, Mr. Leo Rosetta, via a telephone interview on January 30, 1969." The application was issued following the amendment. The amendments were made to clarify the claims, not to distinguish them from any prior art references.

*The Berlyn Filters*

The accused devices, Berlyn Continuous Filters Model numbers CF3539 and CF4549 were manufactured by the Berlyn Corporation of Worcester, Massachusetts, and sold to the defendant Kimberly-Clark in 1977. They were in use prior to the filing of this lawsuit and during the pendency of the suit.

The Berlyn screen changer devices operate without stopping the extruder and without producing great variations in the back pressure of the plastic in the extruder. The accused devices have heated enclosures connected between the extruder and the dies. The enclosures have a slot or channel transverse of the plastic flow that intercepts the flow, an inlet port at one end of the channel, and an outlet port at the other end.

Each of the accused devices has a string of three trays in the channel at all times and the trays are moved from the inlet port to the outlet port under the influence of an external force, a hydraulic ram, pushing the

string through the channel in small increments. Each tray is divided into small compartments separated by narrow dividers. A small rectangle of filter screening material is inserted into each of the compartments before the tray is introduced into the channel. Each tray is coupled to its neighbor so that all trays in the channel move simultaneously during the filtering process. The trays have a number of perforations which are larger than the interstices of the screen elements.

A stream of air at the ports controls the temperature so that a solidified sealing plug is maintained and re-formed as the string of trays moves through the channel. The solidified plugs surround the trays at the inlet and outlet ports and prevent the plastic from leaking out of the slots.

*The Claims*

In a stipulation filed June 30, 1980, the defendant agreed that claims 1, 3, 15, 18, 20, 23, and 25 of the Kalman patent read on the accused Berlyn devices but for the description of the filter as a "band or ribbon" and "in the form of a band or ribbon." Based in part on the stipulation, plaintiff moved for summary judgment on both issues, validity and infringement. In a decision and order filed November 5, 1981, and hereby incorporated by reference into this decision, I determined that the filters used in the accused Berlyn devices were equivalents of the band or ribbon described in the patent. I also determined, however, that defendant had, although somewhat belatedly, inserted another issue into the lawsuit, thus preventing summary judgment. That issue was whether the claims of the Kalman patent must be read as limited to a method of moving the filter across the plastic by differential pressure acting on the plugs formed in the inlet and outlet ports. If so, defendant argued, because the accused devices depend on an external hydraulic ram, there could be no infringement. Defendant also argued, relying primarily on U.S. Patent 3,112,525, the so-called Moziek patent, that if the limitation is not read into the Kalman claims, the Kalman patent is invalid. Following trial, the issues remain nearly the same as they were on summary judgment. The controversy swirls around the scope of the patent claims.

*Infringement*

Plaintiff asserts infringement of claims 1, 3, 15, 18, 20, 23, and 25. Infringement of Claims 4, 5, and 16 is no longer actively asserted. The allegedly infringed claims are as follows:

1. A process for filtering a heat-softened substance flowing through a passage comprising the steps of introducing a filter in the form of a filter band or ribbon by passing it through inlet and outlet ports flanking said passage so that a part of the filter extends across said passage, forcing the substance through the filter part to filter said substance whilst providing temperature conditions at said inlet and outlet ports resulting in the formation within said ports of sealing plugs of said substance of adequate rigidity to prevent substantial leakage at said ports and, when desired, effecting movement of said filter through said ports under conditions providing for self-maintenance of said sealing plugs to introduce another part of said filter band or ribbon into said passage.

3. A process as claimed in claim 1 wherein movement of said filter band or ribbon is effected intermittently.

15. A process as claimed in claim 1 in which said substance is a heat-softened plastic material.

18. A filtering device, for filtering a heat-softened substance, including a body defining a passage through which said substance can be caused to flow and slotted inlet and outlet ports flanking said passage through which a filter in the form of a band or ribbon is passed and can be moved to introduce different parts of said filter across said passage, said ports being adapted for the formation therein, in use, of sealing plugs of the substance being filtered permitting movement of said filter through said slots without substantial leakage of said sub-

stance, and means to provide temperature conditions at said ports to form said plugs.

20. A filtering device as claimed in claim 18 wherein each slotted port defines an extended channel through which said filter passes.

23. A filtering device as claimed in claim 20 including means for controlling the temperature of each port.

25. A filtering device as claimed in claim 20 wherein the channel of at least one of said ports is parallel sided over at least part of its length.

Because of the stipulation and the decision of November 5, 1981, there are limited areas of controversy on the infringement issue. It is agreed by the parties that the Berlyn devices infringe the Kalman patent *except for* one remaining item. As on summary judgment, defendant asserts that the Kalman claims "must be read in light of the patent specification and thus the claimed step of 'effecting movement' must be read with the limitation that the movement is effected by differential internal hydrostatic pressure." Defendant's Proposed Findings No. 30, p. 12. Because the Berlyn device does not rely on differential pressure to effect movement, but rather uses a hydraulic ram, defendant argues that there can be no infringement.

I find that claims 1, 3, 15, 18, 20, 23, and 25 are directly infringed by the Berlyn devices. These claims contain no reference to movement of the filter by hydrostatic pressure. Method claim 1 refers merely to "effecting movement" of the filter. When one looks to other claims, it becomes clear that "effecting movement" in claim 1 does not refer to one means of moving the filter. Alternate means of effecting movement are set forth in claims 5, 6, and 7. Claim 7 states that a "tractive force" may be applied to the filter to effect intermittent movement of the filter. I read claim 7, as does plaintiff, to mean that a tractive force alone may be used to move the filter.

In determining whether an accused device infringes a patent, one must first examine the claims. If the accused device falls within a claim, infringement exists. *Graver Tank v. Linde Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Thus the Berlyn devices must be compared to the claims of the Kalman patent, not to a preferred, in this case, more sophisticated embodiment as described in the specifications. See: *Smith v. Snow,* 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721 (1935). Defendant cannot avoid infringement by impairing the function of one element of the preferred embodiment, especially when the less sophisticated method here is, in effect, found in one of the claims. That the Berlyn devices push rather than pull the filter is not a difference of enough significance to escape the charge of infringement. Defendant's employee, Edward H. Ruscher, testified during his deposition that it makes no difference in the Berlyn device whether the filter trays are pushed or pulled. Thus, the Berlyn filters infringe claims 1, 3, 15, 18, 20, 23, and 25 of the Kalman patent.

### *Validity*

The next issue is the validity of the patent. At the time of the invention, it was

> "*known art* to employ two distinct filter gauzes supported by separate perforated backing discs and when one becomes clogged the other is made to continue filtering. This is achieved either by redirecting the flow from one filter disc to the other by means of a valve or by incorporating the two filters and their supports in a slide which can be periodically reciprocated transversely to the flow of the plastics material. Eventually however the clogged or damaged filter discs still require replacement and this is an essentially manual operation involving work with hot and sticky objects and regular attendance by personnel. These *known methods* usually involve metal to metal sealing necessitating high actuating forces and the use of costly hydraulic equipment if leakage is to be minimized." Kalman Patent, Column 1, lines 54–68, emphasis added.

The Cowen patent, number 642,814, is an example of the slide screen changer known in the art prior to the Kalman invention.

One of the problems with a slide screen changer filtering device was that it could not, with sufficient speed, provide a fresh filter to the stream of material that was heavily contaminated with impurities. In recycling scrap plastic materials such as those once used by consumers, a large quantity of impurities must be removed. Plastic material that is heavily contaminated quickly clogs a filter. An increase in pressure in the material upstream from the filter then results, requiring a constant changing of filters. The problems with slide screen changers are further described in a brochure published by the Berlyn Corporation called "Continuous Filters." Trial Exhibit # 56.

The seals of a slide screen changer were usually made with metal-to-metal contacts, including a soft metal bushing. The slide screen could be pushed from one side to another with a reasonable amount of force.

In 1967 plastics were being filtered at temperatures of up to 600° Fahrenheit and at pressures of up to 5,000–6,000 pounds per square inch. Then, as now, in order to maintain a consistent product emerging from the filter, there was a need to keep the temperature and pressure of the plastic material constant.

The problems addressed by the Kalman patent were how to maintain constant temperatures and pressures, how to avoid production delays for screen changes, and how to avoid excessive leakage of the hot plastic material. Before the patented Kalman devices were made, there was no screen changer or filtering device for heat-softenable plastics that moved slowly, a little at a time, across a stream of plastic material.

Defendant argues that prior art references not before the Patent Examiner invalidate the Kalman patent. The principal reference relied on is U.S. Patent 3,112,525 (Moziek). Defendant also relies on U.S. Patent 1,195,576 (Garrahan); U.S. Patent 2,507,311 (Lodge); U.S. Patent 3,007,199 (Curtis); U.S. Patent 2,920,347 (Joukainen); U.S. Patent 3,278,986 (Welt); U.S. Patent 3,331,101 (Thomas); and U.S. Patent 3,354,504 (Lehner). Garrahan and Curtis disclosed modified screen change devices. Garrahan is described as a rubber reclaiming machine. Lodge discloses a fixed screen filter device where the filter itself is a continuous screen. Sealing against leakage is accomplished by clamping the filter between metal parts. However the extruder must be shut down to present a new filter to the stream of material, which is described as rubber, compounds, or the like. Joukainen discloses a seal for a rotary pump of an extruder device. Joukainen has little or no relevance to filtering.

Welt discloses a seal for a rotary pump of an extruder device. It is difficult to see the relevance of Welt to filtering. Thomas discloses double-acting screw flights to collect plastic material which leaks past the rotary shaft of an extruder. Joukainen, Welt and Thomas all require leakage of the plastic material from the seal because the material has become degraded and must not reenter the stream of plastic material. Lehner discloses a stuffing box forming a seal at the high pressure end of an extruder screw.

The Moziek patent is the one on which defendant primarily relies. Moziek discloses a process for filtering a heat-softened substance. The patent discloses a heated extruder barrel through which molten thermoplastic material flows. A slidable cartridge assembly into which a filter is placed is positioned within a slot across the flow of the plastic and against a fixed internal supporting breaker plate. At each open end of the transverse channel Moziek discloses rotatable valve assemblies. The valve assemblies are cylindrical with an intermediate segment cutout. Provision is made to rotate these valves 90°. When the valves are positioned in one position the cylindrical portion of the valves serves to seal or block the channel opening but when they are rotated 90° the intermediate cutout segment is aligned with the channel opening so as to permit insertion of a new filter cartridge assembly through one side and per-

mit a dirty or clogged filter cartridge assembly to be ejected out the other side.

Moziek discloses operating the filter with the filter cartridge assembly fixed in the flow passage until the screen becomes clogged and a filter change is necessary. At this point Moziek indicates that both valve cores must be open so that a channel or slot is completely open and a new fresh filter cartridge is pushed through the slot with a retractable ram or rod. This action pushes the fresh cartridge assembly until it abuts the clogged assembly within the filter body and moves the new cartridge into the flow passage while forcing the clogged assembly out of the outlet port. After this is completed, Moziek discloses closing the valves until the next filter change is required. In the disclosure, the filter change occurs while the extruder keeps operating so that there is no interruption in the extrusion process. However, the inventor, John Moziek, testified that the machines built according to his specifications by the Monsanto Corporation were stopped for filter changes to avoid the excessive leakage which otherwise occurred.

The description of the valves which are closed when the Moziek device is in operation, includes a method of circulating a cooling medium in order to prevent leakage past the valves.

I find that the Moziek patent discloses a variation on the screen changer method of filtering plastic. It does not call for continuous movement of the filter; rather, as in screen changers, the change is done all at once—that is, an entire new filter is placed across the flow. Furthermore, Moziek makes no provision for a band or ribbon or any length of filter. Rather, as is typical for screen changers, two filters are called for—one being used, one being cleaned. Although Moziek teaches that the valves can be cooled to prevent leakage, the theory of the cooling is different from that in the Kalman patent. In Moziek, leakage is primarily prevented by using closely fitting metal parts. The cooling helps prevent leakage past the valves. This is vastly different from relying on the plastic itself, as in Kalman, to form plugs.

Defendant built a model screen changer, demonstrated at trial (Exhibit # 73), which it claims was constructed in accordance with the teachings of the Moziek patent. The machine was constructed in 1981 in the factory of the Berlyn Corporation. Plaintiff objected to the demonstration at trial; the exhibit was received subject to my determination as to weight. I find, as indicated below, that the demonstration has very little probative value. The machine, constructed in 1981, with adjustments made in 1982, is not constructed under the teachings of the Moziek patent. At best it is a hybrid machine, constructed by use of as much of the Moziek patent as possible, but with tremendous overlays of knowledge acquired subsequent to Moziek and, more tellingly, subsequent to the Kalman disclosures.

The machine differs significantly from the teaching of the Moziek patent. The Moziek machine is to be run with the valves closed; in the demonstration the valves were open. In Moziek the filter is not a long filter extending through the valves—indeed, how could it be if the valves are to remain closed. In Moziek, the filter does not move continuously, rather the screens are changed all at once. In Moziek leakage of plastic is to be minimized, not used as self-sealing plugs as in the demonstration. Defendant claims that it made only minor modifications to Moziek to arrive at the demonstration machine. I find that those modifications were not minor; they were significant innovations taught by the Kalman patent.

Although a patent is presumed valid under 35 U.S.C. § 282, the presumption is not conclusive. *St. Regis Paper Co. v. Bemis Co.,* 549 F.2d 833 (7th Cir.1977); *cert. den.,* 434 U.S. 833, 98 S.Ct. 119, 54 L.Ed.2d 94. It shifts the burden of proof to the party attacking the validity of the patent. *Republic Industries, Inc. v. Schlage Lock Co.,* 592 F.2d 963 (7th Cir.1979). It is stated, however, that the presumption does not exist in the face of prior art not before the Patent Office. *Republic Industries, su-*

*pra, Chicago Rawhide Mfg. Co. v. Crane Packing Co.,* 523 F.2d 452 (7th Cir.1975); *cert. den.,* 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103. In order to weaken the presumption, the prior art references, cited to the district court must be more pertinent than those cited by the Examiner. *Uarco, Inc. v. Moore Business Forms, Inc.,* 440 F.2d 580 (7th Cir.1971); *cert. den.,* 404 U.S. 873, 92 S.Ct. 91, 30 L.Ed.2d 117. Defendant argues that the patents cited above, especially Moziek, Garrahan, Curtis and Lodge, are more pertinent to the claimed invention of the Kalman patent than the prior art references cited but not applied by the Patent Office. Defendant's argument with regard to the prior art cited by the Examiner is that it is not relevant to the Kalman invention because it does not deal with filtering thermoplastic material. I must note that the same could be said of Garrahan and Lodge, which on their face deal with straining rubber products.

The citations to prior art in the Kalman patent include statements regarding the prior art in Column 1 of the patent in which is detailed the problems inherent in screen changers. The patent explains in Columns 1 and 2 that the purpose of the invention is to overcome the problems by use of a band or ribbon of filter and to make use of the "temperature dependent viscoelastic properties of the materials . . . being filtered." Through the language in Column 1 regarding previous methods of filtering plastics, the Examiner was made aware of previous patents on machines to filter plastics. Moziek and Curtis are simply variations on the many machines in which an attempt is made to filter thermoplastic material while effecting screen changes without interfering with production.

Moziek, as glossed by defendant, is of course much more pertinent than any of the prior art citations. However, Moziek, as written, without benefit of defendant's hindsight, recedes in significance to its value as another example of a slide screen changer, whose presence on the scene is acknowledged at Column 1 of the Kalman patent.

The essence of the Kalman invention is the continuous filter. It seems clear to me that the relevance of the prior art cited by the Examiner was that the patents cited involved continuous filters. To a degree greater than the prior art cited by the defendant, Mickle, U.S. Patent 2,218,453; Doubleday, U.S. Patent 2,675,129; Avery, U.S. Patent 3,138,015; and Beduhn, U.S. Patent 3,310,172 are relevant to the essence of the invention. They all involve means of continuous movement of a filter so as to afford continuous filtration.

Even assuming, however, that Moziek and/or the other citations relied on by defendant overcome the presumption of validity, defendant has not shown that the Kalman invention is invalid under 35 U.S.C. § 102 or § 103.

The Moziek patent falls far short of anticipating the Kalman patent under 35 U.S.C. § 102. To be in anticipation a prior patent must include all the teachings necessary to accomplish what the allegedly invalid patent succeeds in doing. *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.,* 436 F.2d 1180 (7th Cir.1971). As explained above, Moziek, as written, does not teach what Kalman does. Defendant does not contend that any of the other prior art citations are an anticipation of the Kalman patent.

The Kalman patent is not invalid for obviousness under 35 U.S.C. § 103. When a determination under § 103 is to be made:

> ". . . the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue and are to be ascertained; and the level of ordinary skill in the pertinent art resolved." *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966).

Looking to the first criterion, I conclude that the prior art shows variations and incremental improvements on the slide screen changer for filtering thermoplastics and includes various forms of continuous filters for other media which are somewhat easier to handle than thermoplastics. However, none of the prior art reveals a way to use a continuous filter with plastics. Specific problems not provided for by the prior art

include, for instance, the problem of how to prevent leakage at the inlet and outlet ports. The step forward taken by Kalman solves several problems at once: prevention of leakage; continuous filtering; and maintenance of constant temperature and pressure in the plastic upstream.

The level of skill in the art is revealed in a number of ways. In *Malsbary Mfg. Co. v. Ald, Inc.,* 447 F.2d 809 (7th Cir.1971), the court stated that:

> "... the usual way of determining such level is by referring to the subjective reaction of a person thoroughly familiar with the particular art, and if possible, one who practiced the art at the crucial time in question."

Mr. George Pickering, plaintiff's expert, is such a person, and his testimony leads me to conclude that Kalman's invention would not have been obvious to a person of ordinary skill in the art at the time of the invention. Those persons of ordinary skill simply did not see a solution to the problems inherent in filtering plastics.

After an initial analysis regarding obviousness is made, *Graham, supra,* at 17 and 18, 86 S.Ct., at 694, indicates that secondary items may be considered:

> "Such secondary considerations as commercial success, longfelt but unsolved needs, failure of others ..."

The autoscreen devices, built under the Kalman patent, have enjoyed commercial success. Mr. Gerald Berlyn, in fact, attempted to become a licensee for Autoscreens before he built his own machines.

Finally, the United States Court of Appeals for this circuit has recently made an observation which is particularly relevant to the defense of obviousness in this case. In *L.E. Sauer Machine Co. v. Corrugated Finishing Products,* 210 U.S.P.Q. 81, 83 (7th Cir.1981), it stated:

> "The courts must take care not to conclude that an invention is obvious because it has become obvious by hindsight."

*Conclusion*

Defendant's argument in this case is that the patent must be read to include a requirement for movement of the filter by differential pressure. So read, defendant argues, the patent is not infringed, but read without the requirement the patent is invalid for obviousness. The argument is undoubtedly clever and if the premise is accepted, defendant wins either way. However, my examination of the evidence convinces me that the argument rests on faulty premises and, like all such arguments, must fail.

The Kalman patent does not require movement of the filter by differential pressure, rather differential pressure is used in the preferred embodiment of the invention. Thus, the Berlyn devices infringe the patent. It does not follow that the patent is invalid. The patent takes great steps beyond the prior art, including Moziek, and by itself, sets forth solutions to several of the problems inherent in filtering heat-softened plastic.

In accordance with this decision, counsel for the parties are directed to confer and, if possible, agree on what further proceedings will be necessary to bring this case to its conclusion in this court. Both counsel are to submit a report within 30 days outlining their view of further proceedings. SO ORDERED.