**Arthur M. HERSCHENSOHN and Corona Hair Net Corporation, Plaintiffs-Appellees,**

v.

**Robert M. HOFFMAN, Individually, Robert M. Hoffman, d/b/a Image Products Co. and Advanced Design Laboratories, Hoffman Beauty and Barber Supply Co., Hoffman Beauty and Barber Supply Co., d/b/a Image Products Co. and Advanced Design Laboratories, Defendants-Appellants.**

Nos. 77–1718, 77–2638.

United States Court of Appeals, Ninth Circuit.

March 26, 1979.

R. Douglas Lyon (argued), of Lyon & Lyon, Los Angeles, Cal., for defendants-appellants.

Ronald W. Reagin (argued), Los Angeles, Cal., for plaintiffs-appellees.

Before CARTER and WRIGHT, Circuit Judges, and CRAIG, District Judge.*

JAMES M. CARTER, Circuit Judge:

This is an action for infringement of Patent No. 3,253,292 (hereafter No. 292), wherein the district court entered a Judgment that the patent was valid and infringed and awarded damages. This is Appeal No. 77–1718.

Thereafter, a Judgment was entered holding defendants in contempt for offering to sell their devices during the period between the receipt of a Memorandum of Decision and the entry of Judgment for the plaintiffs. The appeal in this proceeding is No. 77–2638. We reverse both Judgments.

*Facts*

On May 15, 1964, Herschensohn, one of the plaintiffs herein, filed an application for letters-patent. The patent, No. 292, was issued on March 31, 1966.

Prior to 1971, plaintiffs sold a brush made from a flexible copolymer plastic with tufts of bristles, including 7 or 8 slender strands folded to form 14 to 16 bristles. Exhibit 3, in evidence, is an example of this brush. In 1971, the design was changed by the plaintiffs so that each tuft was formed from a single heavier monofilament folded to form two bristles, one longer than the other.

In 1974, the handle, spine and fingers were made from a plastic material which was less flexible than the original copolymer plastic material. Exhibit 2, in evidence, is an example of this second brush.

Defendants admittedly copied the latter brush, Exhibit 2, by having an organization in Hong Kong make the brushes and import them to the United States. They were literally "Chinese copies" of plaintiffs'

---

* Hon. Walter E. Craig, Chief U. S. District Judge, District of Arizona, sitting by designation.

second brush, Exhibit 2. Exhibit 5, in evidence, is an example of the defendants' alleged offending brush.

Patent No. 292 has four claims, of which # 1, # 3 and # 4 are alleged to be infringed. Claim # 1 is the only independent claim. Claims # 3 and # 4 are merely minor variations of Claim # 1.

Claim # 1 reads as follows:

1. In a hair brush of the character described, a handle, a brush back comprising a flexible spine element extending as a cantilever from said handle, a first series of closely spaced fingers extending laterally from one side and a second series of closely spaced fingers extending laterally from the opposite side of said spine element and tufts of relatively stiff bristles extending downwardly from at least the fingers of said brush back whereby when the brush is pulled through hair through which a comb can pass, said spine will bend so that the distal ends of the fingers on the trailing side of the brush will approach each other.

The appeals raise three questions:

1. The validity of the patent claims, # 1, # 3 and # 4.

2. Whether the patent claims were infringed.

3. Was there a valid injunction in the Memorandum of Decision which can sustain the Contempt Judgment.

### Validity

The patent sets forth a combination of old elements, four in number: a handle, a flexible spine, laterally extended fingers, and tufts of relatively stiff bristles. All of these elements are old in the art and no discussion of this art is necessary. The patent, therefore, is a combination patent and is controlled by the Supreme Court decisions on such patents. One of the latest such cases is *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976). There a unanimous Court reviewed the earlier cases and reversed the Fifth Circuit decision which had held the patent valid.

Congress in 1952 enacted 35 U.S.C. § 103, "as a codification of judicial precedents . . . with congressional directions that inquiries into the obviousness of the subject matter sought to be patented are a prerequisite to patentability." *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966).

Section 103 provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

In *Sakraida, supra*, the Court said (425 U.S. at 280, 96 S.Ct. at 1536):

"The ultimate test of patent validity is one of law, *Great A. & P. Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 155 [, 71 S.Ct. 127, 131, 95 L.Ed. 162, 168] (1950), but resolution of the obviousness issue necessarily entails several basic factual inquiries, *Graham v. John Deere Co., supra*, 383 U.S. at 17 [, 86 S.Ct. at 693, 15 L.Ed.2d at 556.]

'Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.' *Ibid.*"

\*      \*      \*      \*      \*      \*

"Indeed, respondent admitted at trial 'that the patent is made up of a combination of old elements' and 'that all elements are individually old  . . . .' Accordingly, the District Court properly followed our admonition in *Great A. & P. Tea Co. v. Supermarket Corp., supra*, 340 U.S. at 152 [71 S.Ct. at 130, 95 L.Ed. at

167]: 'Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements . . .. A patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men . . . .'" *Sakraida, supra,* 425 U.S. pp. 280–1, 96 S.Ct. p. 1537.

"We cannot agree [with the appeals court below] that the combination of these old elements . . . can properly be characterized as synergistic, that is, 'result[ing] in an effect greater than the sum of the several effects taken separately.' *Anderson's-Black Rock v. Pavement Co.,* 396 U.S. 57, 61 [90 S.Ct. 305, 308, 24 L.Ed.2d 258, 261] (1969). Rather, this patent simply arranges old elements with each performing the same function it had been known to perform, although perhaps producing a more striking result than in previous combinations. Such combinations are not patentable under standards appropriate for a combination patent. *Great A. & P. Tea Co. v. Supermarket Corp., supra; Anderson's-Black Rock v. Pavement Co., supra.* Under those authorities this assembly of old elements . . . falls under the head of 'the work of the skilful mechanic, not that of the inventor.' *Hotchkiss v. Greenwood,* 11 How. [248, 13 L.Ed. 683, at 691] at 267.

. . .

" . . . [D]esirable benefits 'without invention will not make patentability.' *Great A. & P. Tea Co. v. Supermarket Corp.,* 340 U.S. at 153 [, 71 S.Ct., at 130, 95 L.Ed., at 167] . . . ." *Sakraida, supra,* 425 U.S. pp. 282–3, 96 S.Ct. pp. 1537–38.

Counsel for the plaintiffs apparently never understood fully the requirement that a patent based on a combination of elements old in the art must produce a new and unusual result. Counsel stated: "These defendants have asserted that these cases require a patent to have a synergistic result.

. . . In their trial brief they said they had to make 2 plus 2 equal 5, which was the expression they used. This appears to be an assertion of one of two things: either 1, an assertion that the Supreme Court has overruled the patent system, or, 2, a requirement that you have to violate or at least disprove a known law of nature before you can have a valid patent. Because obviously 2 plus 2 never equal 5 [sic]. . . ." Plaintiffs failed to identify a synergistic result.

The trial court, in Finding of Fact # 22, stated:

"22. The brush of the '292 patent does produce an unusual or surprising result which would not be expected by the man having ordinary skill in the art. The flexibility of the brush's spine element, when coupled with the plurality of bristle carrying fingers extending laterally on each side of the flexible spine, with the vents between the finger members, allows the brush to be pulled through hair with remarkable ease. This is an unusual or surprising consequence from the unification of the elements concerned. It is an unusual or surprising result. It is not merely the sum of the results of the individual elements of the brush but is instead an effect greater than the sum of the effects of the several elements of the brush taken separately."

The trial court's Memorandum of Decision was similar.

We conclude that Claims # 1, # 3 and # 4 of the patent are invalid. Claim # 1 recited that the bending of the distal ends of the fingers on the trailing side of the brush "would approach each other." The patent lists various purposes:

(1) Mechanical action to penetrate thick tresses, dig into the scalp and cause drag on the hair and scalp to accomplish the effects of massage.

(2) To agitate the root of the hair and its associated muscle tissue and bring additional sebum to the hair and increase the luster of the hair.

(3) To automatically pinch and tug the hair and thus exercise the hair roots and their environments.

(4) To provide a hair brush which is easily cleanable, simple in construction, reasonable in cost, and efficient in carrying out the purposes for which it was designed.

(5) Finally, since the tips of the fingers in the patent all come towards each other, causing the bristle tufts to pinch the hair between them, the bristles are generally of stiff material. The attendant movement of the brush will cause the pinched hair to be tugged, dragged on and pulled.

None of these listed "purposes" of the patent produce a "new or different function" (*Anderson's-Black Rock v. Pavement Co.*, 396 U.S. 57 at 60, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969)) from that produced by the old elements in the combination.

The result claimed by plaintiffs as synergistic, "pulling the brush through the hair with remarkable ease" (Memorandum of Decision) is contrary to the teachings of the patent. The use of two bristles in each tuft, as shown in Exhibit 2, may assist in allowing the brush to be pulled through the hair with ease. The use of such a bristle to accomplish ease of pulling through the hair would be obvious.

Certainly, the two results referred to by the court in its Memorandum of Decision— (1) allowing the brush to be pulled through the hair with remarkable ease, and (2) the vents allowing the hair to be easily blown dry—are not new or unusual results.

■ It is obvious from the above that the patent is not valid, having no new, unusual or synergistic result,[1] and having no beneficial use other than uses already old in the art of brushes and combs. We also hold Claims # 1, # 3 and # 4 of the patent are invalid for obviousness.

1. Late cases in the Ninth Circuit are in accord with our holding. A combination patent (i. e., an accumulation of old devices) is valid " 'only when the whole in some way exceeds the sum of its parts . . . .' " *Astro Music, Inc. v. Eastham*, 564 F.2d 1236, 1238 (9 Cir. 1977).

### Infringement

We have examined closely Exhibits 2, 3 and 5. Exhibit 5 is the offending device and a copy of Exhibit 2. Exhibit 3 was the brush made and sold by plaintiffs prior to 1971. The parties stipulated that Exhibit 3 was within the scope and claims of Patent No. 292.

Claim # 1 of the patent was limited to a brush "comprising a flexible spine element extending from the handle." It provided: "Said spine will bend so that the distal ends of the fingers on the trailing side of the brush will approach each other." The claim also was limited to "tufts of stiff bristles."

None of these elements are found in the accused structure, Exhibit 5. Examination shows the spine will not bend so as to be flexible enough to bend while the brush is run through the hair. The brush will not function as described in the patent, i. e., the fingers will not "come towards each other, causing the bristle tufts to pinch the hair between them . . . " (Patent, p. 1, column 2, lines 56–63), nor, as described in Claim # 1, will "said spine . . . bend so that the distal ends of the fingers on the trailing side of the brush . . . approach each other." (Patent, p. 2, column 2, lines 4–6.)

The plaintiff-inventor testified that the term "flexible" requires sufficient bending to bring the bristles together to grab or clamp the hair between tufts instead of merely floating through the air. Examination shows that Exhibit 2 or Exhibit 5 cannot cause the above actions.

The trial court, although requested to find as a fact that the spine of the accused device, Exhibit 5, was flexible (R. 213), refused to do so, apparently convinced that the spine was not flexible. Likewise, the court, although requested to find that the mode of operation of Exhibit 5 was as set forth in the patent at Column 2, lines 56–63,

*Austin v. Marco Dental Products, Inc.*, 560 F.2d 966 (9 Cir. 1977) also involved a combination patent and is in accord with our holding herein.

refused to do so, apparently convinced that it did not.

Plaintiffs' expert, Mr. Walsh, in describing the operation of plaintiffs' brush, Exhibit 2 (copied by defendants as Exhibit 5) testified that Exhibit 2 was not flexible in the sense used in the patent and that the brush creates no drag or pull.

Also missing from the accused brush, Exhibit 5, are "tufts of relatively stiff bristles." The court refused a request for a finding that the single filament of Exhibit 5 constitutes tufts of relatively stiff material, apparently convinced to the contrary. The substitutions of one filament making two bristles insured the floating movement of the brush, but the elimination of any pulling or grabbing of the hair.

In our case we have an accused device, the brush, Exhibit 5 (a copy of the plaintiffs' brush, Exhibit 2), which does not have the structure or the function described in the patent. It (1) does not have a flexible spine but a spine which will not bend on use; (2) does not have tufts of bristles, but one single monofilament folded to form two bristles; (3) which, by the trial court's Memorandum of Decision and Finding of Fact # 22, has a purpose ("to be pulled through the hair with remarkable ease"), a purpose not listed in the patent and entirely different from the listed objects of the alleged invention; (4) which has no new or unusual or synergistic result; and (5) in toto, a device or brush having a different structure and a different mode of operation and effect than that described in the patent.

■ It is clear that Exhibit 2, the plaintiffs' device which defendants admittedly copied, and Exhibit 3, the device made by plaintiffs prior to 1971, are different brushes in structure and operation. We have held that the patent claims, # 1, # 3 and # 4, are not valid. But even if valid, it was *not* Exhibit 3 which was copied but Exhibit 2. Exhibit 2 does not infringe the patent.

*The Contempt Judgment*

The trial court's Memorandum of Decision was entered on January 20, 1977. On February 28, 1977, the final Judgment was entered. The plaintiffs moved to hold defendants in contempt of court for allegedly violating· an injunction against infringement which plaintiffs claim was included within the Memorandum of Decision. After a hearing, Findings of Fact, Conclusions of Law, and a Judgment of Contempt were entered on April 4, 1977, against defendants. Defendants have appealed the Contempt Judgment in Appeal No. 77–2638.

■ The general rule is that an unpatented object may be copied and sold. *Sears, Roebuck & Co. v. Stiffel Company,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco. Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

Since we have held the patent invalid, the sole question presented on Appeal No. 77–2638 is whether, after January 20, 1977, there was in effect a valid injunction against infringement by defendants of the plaintiffs' alleged patent.

The Memorandum of Decision ended with an order:

"It is therefore Ordered that judgment *be entered* for plaintiffs in the amount specified above and that the defendants *be permanently enjoined* from further infringing plaintiffs' patent. Counsel for plaintiffs is directed to *prepare proposed findings of fact, conclusions of law and judgment* pursuant to local Rule 7. (Judgment shall be set forth as a separate document as required by Rule 58, F.R. Civ.P.)

Dated January 17, 1977

Laughlin E. Waters
United States District Judge"

(Emphasis added)

There are various reasons which demonstrate plaintiffs are in error in their contention that the Memorandum and Order constitute an injunction.

(1) The Memorandum and Order speak of the future. It does not state that defend-

ants *are* enjoined, but, instead "be" permanently enjoined. We read the language as a direction—the defendants *[will]* be enjoined, after the proposed Findings and Judgment are prepared by plaintiffs' attorney and signed by the court. The Final Judgment, dated February 28, 1977, stated that the defendants and their agents "*are* forever enjoined and restrained."

(2) Rule 58, F.R.Civ.P. requires—

"every judgment shall be set forth on a separate document. A judgment is effective only when so set forth, and when entered as provided in Rule 79(a)."

A recent Supreme Court case, *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), decided after the Contempt Judgment, may have pulled some of the teeth in Rule 58, *supra*, by providing that in certain cases the rule may be waived by the parties. Regardless of the effect or retroactivity, if any, of that case, Rule 58 must be viewed as having a bearing on the intent of the court and the parties as to whether an injunction was intended. The Memorandum directed counsel for the plaintiffs to prepare findings of fact and conclusions of law and judgment pursuant to local Rule 7 and Rule 58, F.R.Civ.P. Local Rule 7 of the Central District of California requires findings of fact and conclusions of law and implements Rule 58, F.R.Civ.P.

(3) Plaintiffs argue that there was an injunction *pendente lite* in the Order. However, the Order speaks of *preparation* of a *permanent* injunction.

(4) Rule 65(c), F.R.Civ.P. requires security or a bond, unless the court directs otherwise, and findings of fact to support the injunction.

(5) Rule 65(d), F.R.Civ.P. requires that an injunction " . . . shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts to be restrained . . . ." The Memorandum of Decision signed by the court did not comply with Rule 65(c) or (d).

(6) Plaintiffs cite no authority that the Memorandum of Decision can be an injunction, and defendants could find none.

 It is true that an injunction must be obeyed while objections and questions are presented on appeal. But plaintiffs assume that an injunction was issued. We find that no injunction was issued, but only direction for the entry of a permanent injunction against infringement. The rule of law above does not apply.

The judgments are reversed and the case remanded to the district court for entry of a judgment on non-validity and non-infringement.

