**HEWLETT–PACKARD COMPANY,**
Plaintiff-Appellant,

v.

**TEL–DESIGN, INC., Defendant-Appellee.**
**No. 25373.**

United States Court of Appeals.
Ninth Circuit.

May 16, 1972.

Rehearing Denied July 10, 1972.

**626**

Jean C. Chognard (argued), Albert C. Smith, Roland I. Griffin, Palo Alto, Cal., Benjamin C. Howard, Baltimore, Md., for plaintiff-appellant.

Jack M. Wiseman (argued), Milton D. Rosenberg, of Rosenberg & Wiseman, San Jose, Cal., for defendant-appellee.

Before MADDEN, Judge of the Court of Claims,* and HAMLEY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

Hewlett-Packard Company appeals from a judgment of the district court holding U. S. Patent No. 3,290,586, claims 1 through 5, valid and infringed by the manufacture and sale of an Open Cable Pair Locator by the appellant.[1] The district court had jurisdiction under 28 U.S.C. § 1338(a), this being an action arising out of the patent laws of the United States. Our jurisdiction is based on 28 U.S.C. § 1291.

U. S. Patent No. 3,290,586 (hereinafter the "Anderson patent"), known as an "open fault locator" was issued to Robert E. Anderson on December 6, 1966, who in turn assigned all rights in the patent to appellee Tel-Design, Inc. The open fault locator device is used by telephone craftsmen to locate breaks in telephone cables. It relies on the physical fact that the capacity of a telephone cable is proportional to its length. Standard telephone cable is manufactured to have a capacity of .083 microfarad per mile within each pair of wires. Thus, if a capacity measurement from a test point shows that a cable pair has a capacity of .083 microfarad, the cable pair ends (that is, the break occurs) one mile from the test point.

The instrument in question measures capacity by means of the charge sharing method. A known voltage is applied to the cable at a selected test point. The amount of charge stored in the cable is proportional to the distance between the test point and the point of cable break. The voltage source is then switched off the cable, leaving it with the known voltage. A capacitor of known capacity is then connected to the cable. Some electrical charge on the cable is shared with the known capacitor. The proportion of sharing between the cable and the known capacitor is determined by the relative capacity of the known capacitor and of the cable. The voltage on the known capacitor is related to the amount of charge initially stored on the cable, which in turn is related to the distance to the break in the cable. This voltage is measured by the instrument. The scale on the instrument is calibrated to read in units of length and gives the distance to the fault directly in feet or miles.

In its findings of fact and conclusions of law and a carefully prepared opinion, the trial court held that claims 1 through 5 of the patent were valid and infringed but that claims 8 through 11 and 15 were not. Hewlett-Packard Company appeals from the decision finding claims 1 through 5 valid. No cross-appeal by Tel-Design, Inc. was taken.

■ The appellant contends that the Anderson patent claims at issue on this

---

* The Honorable J. Warren Madden, Judge, United States Court of Claims. Judge Madden participated in the hearing of this case, but died before this opinion was prepared.

1. The full name of the patent is "Apparatus For Measuring The Distance To An Open Circuit In A Cable Pair Including Means For Storing A Charge Commensurate With Such Distance."

appeal are invalid for obviousness under 35 U.S.C. § 103.[2] Our examination of this contention must begin with the standard set forth in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966):

> "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." 383 U.S. at 17, 86 S. Ct. at 694.

In the present case, neither party contests the district court's findings as to the scope and content of the prior art. Golding (1940) teaches that the position of a cable break may be found by a capacity test, the capacity of the cable being proportional to its length.[3] The prior art also provides several charge sharing methods and indicates that the method can be used for measuring small capacities such as the capacity of telephone cables. Michels (1941) illustrates a method of determining an unknown capacitance by comparing it with a known capacitance and taking voltage readings with an electrometer. Thus, a known capacitor is charged by battery and then connected to the unknown capacitor for sharing of the charge. Voltage readings taken from the known capacitor both before and after sharing with the known capacitor give the values necessary for determining the unknown capacitance by a particular formula.

Karapetoff (1912) and Thompson (1914) describe similar charge sharing methods. Thompson's instruction is as follows:

> "*Electrometer Method.*—Charge the condenser of unknown capacity to a certain potential; then make it share its charge with the condenser of known capacity, and measure the potential to which the charge sinks; then calculate the original capacity, which will bear the same ratio to the joint capacity of the two as the final potential bears to the original potential."

Karapetoff teaches a charge sharing method of measuring capacitance which differs from the Thompson method in that the known capacitor is charged first and then shared with the unknown capacitor.

The final aspect of the prior art found by the district court and uncontested by the parties, is Lamont (1962). His patent points out:

> "This invention relates to measuring devices and particularly to a method of, and apparatus for locating faults in multi-conductor cable.

> \*　\*　\*　\*　\*　\*

> "It is, therefore, an object to this invention to provide a method of, and apparatus for the location of faults in cable which is direct reading, accurate and simple and convenient to use.

> "In accordance with the general features of this invention, a voltage is applied to a first conductor in a cable, the magnitude thereof being decimally related to the length of the cable. The voltage from one end of the first conductor to one opposite end of a second conductor in the cable is then measured, the fault being located be-

2. 35 U.S.C. § 103 provides in pertinent part:
　"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

3. Golding's teaching states:
　"Tests for an Open-circuit Fault. If a complete disconnection occurs in a cable— either by a fault burning clear without causing a ground fault, or on account of the cable being pulled out at a joint—its position may be found by a capacity test. The capacity of a cable, to ground or to another parallel conductor, is proportional to the length of the cable."

**628**

tween the first and second conductors. The *voltage reading obtained* gives the location to the fault directly in units of length." [4]

Although several types of apparatus were generally employed prior to the introduction of the Anderson patent,[5] there was no convenient means for locating open faults or breaks. The methods used were either more time consuming or not as accurate as the Anderson patent. Sometimes, faulty cables were replaced by new cables to avoid the need for locating the fault.

■ The district court concluded that:

"The combined application of the teachings of Golding, Michels, Thompson, Karapetoff, and Lamont in producing the final product of a convenient instrument for locating the distance to a fault in a transmission cable by use of the capacitance charge-sharing technique, is not obvious to persons skilled in the art in view of the prior art." Finding of Fact No. 27.[6]

Appellant urges that this conclusion is erroneous and inadequate under controlling decisions. We agree.

■ At the outset we must reject appellee's reliance upon the statutory presumption of validity which it contends attaches to the grant of the Anderson patent.[7] Where the element of patentability being considered is the obviousness of the subject matter when weighed against the prior art, the presumption dissipates in the face of a showing that the prior art was not brought to the attention of the examiners. Here four of the five references to prior art relied upon by the district court in its discussion of obviousness were not before the Patent Office.[8] We have previously held that this presumption of validity arising from the issuance of the patent by the Patent Office is insufficient in the face of pertinent prior art not before the patent examiners. Westinghouse Electric Corp. v. Titanium Metals Corp. of America, 454 F.2d 515 (9th Cir. 1971); Exer-Genie, Inc. v. McDonald, 453 F.2d 132 (9th Cir. 1971); Pressteel Co. v. Halo Lighting Products, Inc., 314 F.2d 695, 697 (9th Cir. 1963). Although the district court did not find that the prior art references which it relied upon were more pertinent than those considered by the Patent Office, Neff Instrument Corp. v. Cohu Electronics, Inc., 298 F.2d 82 (9th Cir. 1961), it is clear that the district court's conclusions on the question of obviousness were based on the prior art references outlined above.

This is apparent from the express finding that it was "[t]he combined application of the teachings of Golding, Michels, Thompson, Karapetoff, and Lamont which produced the final product." However, the court in its opinion stated that it could not determine from the file exactly what the Patent Examiner based his allowance on because the file did not clearly support or oppose the trial court's conclusion that the combined application was "not obvious." The trial court concluded that for this reason it had treated the issue of obviousness "on a *de novo* basis." Under these circumstances it is manifest that no support may be gained by appellee from the stat-

---

4. U.S. Patent No. 3,284,704 (Nov. 8, 1966).

5. A Murray Loop Test with earphones, the capacitance measuring bridge and ballistic type apparatus known as a volt-ohmmeter.

6. While this finding was denominated by the trial court as one of fact, the determination of whether a claimed invention meets the test of nonobviousness is one of law where, as here, the relevant facts are not in dispute. Payne Metal Enterprises, Ltd. v. McPhee, 382 F.2d 541, 543 (9th Cir. 1967).

7. 35 U.S.C. § 282 states in pertinent part:
   "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

8. The trial court found that the Patent Office did not consider the publications of Karapetoff, Michels, Thompson, or Lamont, but did consider the publication by Golding.

utory presumptions resulting from the determination of the Patent Office.

Having found that the patent in question was a combination patent we look to the decisions of the Supreme Court and of this court to determine the criteria for determining patentability.

■ Until the Act of 1952 these criteria were novelty and utility. In 1952 Congress added Section 103 which required nonobviousiness. *See* note 2 *supra.* It is with this requirement that we are concerned. Furthermore, when the patent sought is one which combines the teachings of the prior art, special strictness must be applied to be certain that the new claims satisfy all of the requisites of patentability, and particularly Section 103. Jeddeloh Brothers Tweed Mills, Inc. v. Coe Manufacturing Co., 375 F.2d 85, 89 (9th Cir.), cert. denied, 389 U.S. 823, 88 S.Ct. 57, 19 L.Ed.2d 76 (1967). Old elements which are collated for the first time do not necessarily constitute a nonobviousness device which qualifies for a patent. It is "only when the whole in some way exceeds the sum of its parts . . . [that] the accumulation of old devices [is] patentable." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). In this circuit we have determined that the combination of old elements must produce an "unusual or surprising result"; that "unusual or surprising result" is the basis upon which the legal conclusion of nonobviousness must rest. Regimbal v. Scymansky, 444 F.2d 333 (9th Cir. 1971); Santa Anita Mfg. Corp. v. Lugash, 369 F.2d 964 (9th Cir. 1966), cert. denied, 389 U.S. 827, 88 S.Ct. 83, 19 L.Ed.2d 83 (1967); Bentley v. Sunset House Distributing Corp., 359 F.2d 140, 146 (9th Cir. 1966). Consequently, there must be an express finding to this effect, Regimbal v. Scymansky, *supra,* or at least factual findings which could be so construed.

Our examination of the record in this case convinces us that the combination of the elements of the prior art, referred to above, produced no unusual or surprising result.

■ The evidence established that it was within the ordinary skill of the art to use any known capacity measuring technique to locate a cable break. Golding's capacity test for measuring the position of a cable break is based on the fact that the capacity of a cable is proportional to its length. The charge sharing methods of Thompson, Michels and Karapetoff are each means of measuring capacity. In fact, the Anderson patent functions according to the principles stated by Thompson, whereby a condenser of unknown capacity is charged to a certain potential, the charge is then shared with a condenser of known capacity and the potential to which the charge sinks is then measured. The Anderson patent provides a scale reading directly in units of length whereas Thompson teaches calculating the original capacity. However, the direct reading feature has already been patented by Lamont, whose apparatus measures the distance to the fault in units of length. As we have already indicated, it is apparent that each of the elements combined in the Anderson patent was known in the prior art.[9]

■ A device, electronic or otherwise, is not patentable if it consists of no more than a combination of ideas which are drawn from the existing fund of public knowledge, and which produces results that would be expected by one of

9. The appellee emphasizes that in the Anderson patent the meter needle remains fixed over an extended period of time. This feature is said to solve the problem created by the fact that telephone cable pairs have a high leakage factor. Appellee urges that this is a feature which distinguishes the Anderson patent from the prior art. However, claims 1 through 5 do not specify the fixed needle of the meter feature. A patent is limited by its claims. Volvo, Inc. v. Cummings & Sandler, Inc., 435 F.2d 981, 982 (9th Cir. 1971).

ordinary skill in the art. Griffith Rubber Mills v. Hoffar, 313 F.2d 1, 3 (9th Cir. 1963). Each of the elements combined in the Anderson patent perform in the same manner in combination as they did separately. Thompson's teaching functions in precisely the same manner in combination as it did out of combination. A condenser of unknown capacity is charged to a certain potential, the charge is then shared with a condenser of known capacity, and the potential to which the charge sinks is then measured. The same can be said of the other old elements which make up the Anderson patent.[10]

Neither can we accept appellee's contention that the Anderson device is patentable because, allegedly, none of the old elements, taken separately, suggest the combination contained in the Anderson patent. The statutory standard of patentability is directed to the person of ordinary skill in the pertinent art. The fact that the suggestion of combination does not inhere in the separate elements of the prior art which have been combined will not support patentability if the combination of these elements produces results which are neither unusual nor surprising to those of ordinary skill in the art.

■ In this case there was no finding of fact that this particular combination of old elements resulted in any unusual or surprising result. We are thus left without the factual basis or central standard "that must be satisfied in establishing non-obviousness for combination devices." Regimbal v. Scymansky, 444 F.2d 333, 339 (9th Cir. 1971). Nor can we indulge an assumption that such a finding is implicit in the trial court's ultimate legal conclusion of nonobviousness based upon its own de novo determination.

■ We turn, then, to the secondary indicia of patentability relied upon by the district court. The district court found that the fact that the Anderson patent did not fail to fulfill a recognized need in the industry and enjoyed commercial success was at least important in the determination of nonobviousness. However, this court and others have repeatedly held that such secondary considerations cannot make patentable a patent which is invalid for lack of invention. Great Altantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Exer-Genie, Inc. v. McDonald, 453 F.2d 132, 136 (9th Cir. 1971); Hamlow v. Scientific Glass Apparatus Corp., 421 F.2d 173 (9th Cir. 1970); Payne Metal Enterprises, Ltd. v. McPhee, 382 F.2d 541, 546 (9th Cir. 1967); Jeddeloh Brothers Tweed Mills v. Coe Manufacturing Co., 375 F.2d 85 (9th Cir.), cert. denied, 389 U.S. 823, 88 S.Ct. 57, 19 L.Ed.2d 76 (1967); Bentley v. Sunset House Distributing Corp., 359 F.2d 140 (9th Cir. 1966); Griffith Rubber Mills v. Hoffar, 313 F.2d 1, 5 n. 17 (9th Cir. 1963). These secondary considerations may be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented and may be relevant as indicia of obviousness or nonobviousness. Graham v. John Deere Co., 383 U.S. 1, 86

---

10. The appellee contends that a combination patent cannot be invalidated for being merely an aggregation of old elements if the elements relied upon are abstract concepts or teachings rather than tangible physically present old structures. We reject this position. This court has previously held that a device is not patentable if it consists of no more than a combination of "ideas" which are drawn from the existing fund of public knowledge, and which produces results that would be expected by one skilled in the art. Griffith Rubber Mills v. Hoffar, 313 F.2d 1, 3 (9th Cir. 1963). The prior art to which reference may be made properly includes publications as well as existing physical structures. Deep Welding, Inc. v. Sciaky Bros., Inc., 417 F.2d 1227, 1235–40 (7th Cir. 1969), cert. denied, 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648 (1970).

S.Ct. 684, 15 L.Ed.2d 545 (1966); Young Corp. v. Jenkins, 396 F.2d 893 (9th Cir. 1968). We also think the appellant's alleged copying of the Anderson patent is similarly a secondary consideration which does not demonstrate the validity of the patent. Ashcroft v. Paper Mate Mfg. Co., 434 F.2d 910 (9th Cir. 1970).

■ There are circumstances in which these secondary considerations may strengthen the presumption of validity of a patent. In Reeves Instrument Corp. v. Beckman Industries, Inc., 444 F.2d 263 (9th Cir.), cert. denied, 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971), this court found that evidence of fifteen prior unsuccessful approaches to the problem solved by the patent in issue in that case substantially strengthened the statutory presumption of validity. The evidence of prior unsuccessful attempts to solve the same problem established both the pressing need for such a solution as well as the fact that the solution had not been obvious to those whom the court found to be highly skilled in the pertinent art. Thus a showing that there has been a long-felt pressing need for a particular device will substantially strengthen the validity of a patent if that showing is accompanied by evidence of prior unsuccessful efforts to fill that need. In the present case, the district court made no finding that the Anderson patent had been preceded by unsuccessful approaches to the same problem, or that the need had been urgent. The conclusion is inescapable that the Anderson device was convenient and useful. But the validity of a patent cannot rest solely upon its usefulness. Anderson's Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969).

■ We must conclude that claims 1 through 5 of Patent No. 3,290,586 are invalid and the judgment of the district court is reversed as to those claims.