**ALCOR AVIATION, INC.,**
**Plaintiff-Appellant,**

v.

**RADAIR INCORPORATED, a corporation, Successor to Radair, Inc., and Uniwest, Inc., Defendant-Appellee.**

**No. 72–2708.**

United States Court of Appeals, Ninth Circuit.

Sept. 10, 1975.

As Amended on Denial of Rehearing and Rehearing En Banc
Feb. 2, 1976.

**114**

Edward B. Gregg (argued), San Francisco, Cal., for plaintiff-appellant.

* Honorable Lawrence T. Lydick, United States District Judge, Central District of California, sitting by designation.

1. Claim 4 is a method of mixture control and claim 6 is that method as utilized in an airplane in flight. Combined with claim 4, claim 6 reads:

   The method of controlling the fuel-air ratio of a reciprocating-piston gasoline engine [of an airplane in flight] having, for the fuel mixture supplied thereto, a fuel-air ratio control system with manually operable means for adjustment of such ratio between a ratio leaner than and a ratio richer than the stoichiometric ratio, such engine upon operation under constant conditions being characterized by having a maximum exhaust gas temperature that is obtainable by manual adjustment of said manually operable means, and having an exhaust gas temperature sensing and visually indicating means capable of sensing and visually indicating such exhaust temperature during changes thereof resulting from manual adjustment of said manual-

Benjamin F. Berry (argued), Seattle, Wash., for defendant-appellee.

## OPINION

Before WRIGHT and WALLACE, Circuit Judges, and LYDICK,* District Judge.

WALLACE, Circuit Judge:

Alcor Aviation, Inc. (Alcor) is the assignee of Patent No. 3,154,060, filed in 1962 and granted in 1964, which relates to an apparatus and method for manually setting the fuel-air mixture of internal combustion gasoline engines by reference to exhaust gas temperature. Alcor sued Radair Incorporated (Radair) for infringement and infringement was admitted if the patent was valid. The district court held all six claims under the patent invalid for obviousness, 35 U.S.C. § 103, and lack of novelty, 35 U.S.C. § 102(a), (b). Alcor appeals only the ruling on the validity of claim 6, which relates to a method of controlling the fuel-air mixture of an engine on a flying aircraft.[1] Alcor has disclaimed apparatus claims 1 and 2, as well as method claims 3, 4 and 5. We affirm the district court's holding that claim 6 lacked inventiveness because it would have been obvious to one having ordinary skill in the pertinent art.[2] Thus we

ly operable means, the time lag of temperature sensing and indication behind temperature change being so small that indication substantially follows change, which method comprises: operating such an engine under constant conditions, while such engine is so operating, manually operating said means for adjustment of such ratio to vary such ratio and visually observing said indicating means while so varying such ratio so as to correlate such manual operation with such observations to effect indications of temperature rise and fall as the ratio is varied either from rich to lean or from lean to rich, such observations including determination of the maximum temperature indication, and then manually setting said means for adjustment to give a visual indication of an exhaust temperature having a predetermined relationship to such maximum temperature indication.

2. 35 U.S.C. § 103 reads in part:

   A patent may not be obtained though the invention is not identically disclosed or de-

need not consider other grounds also used by the district court upon which the patent was found to be invalid.

Gasoline piston engines ignite a mixture of air and gasoline for combustion and proper performance depends upon a correct ratio of gas to air. Because the conditions of combustion vary as an aircraft increases or decreases speed and altitude, the proper mixture setting changes during flight. Although some general aviation planes have automatic devices which control mixture, most have a control by which pilots can manually readjust the mixture setting when a plane changes altitude or speed. Methods to determine the proper mixture control setting include: leaning to roughness, leaning to maximum power (as measured by rpm), leaning by reference to a fuel flow indicator, leaning by reference to the color of the exhaust flame, leaning by reference to a device which analyzes the exhaust gases and leaning by reference to the torque of the engine shaft measured by the brake mean effective pressure. Alcor's patented method of setting the fuel mixture is by reference to the engine exhaust gas temperature (EGT). The method was marketed in conjunction with unpatentable EGT measuring devices and the package was a great commercial success. It is now the most popular mixture control method for general aviation aircraft.

The scientific basis of Alcor's method is that an engine runs hottest when the ratio of fuel to air is such that all of the mixture is burned, leaving no excess of air or fuel. This occurs at a fuel-air ratio of .067, called the "stoichiometric ratio." A rich mixture, more fuel to air than in the stoichiometric ratio, will give greater power; and a slightly lean mixture, less fuel to air than in the stoichiometric ratio, will give greater economy. Either a rich or lean mixture will

cause the engine to run cooler, which minimizes mechanical problems associated with hot engines. The EGT of the engine can be measured by a probe in the exhaust which the pilot reads on a meter in the cockpit. The patented method of mixture control is quite simple: as a plane flies at a constant speed and altitude, the pilot merely varies the manual mixture control until the maximum EGT is reached; the mixture is then either leaned or enriched to produce an EGT having a predetermined relation to peak EGT.

■  The first question is whether the district court properly rejected the statutory presumption of validity of the patent. 35 U.S.C. § 282. A presumption of non-obviousness dissipates upon a showing that the prior art was not brought to the attention of the patent examiner. *Hewlett-Packard Co. v. Tel-Design, Inc.,* 460 F.2d 625, 628 (9th Cir. 1972); *Jacuzzi Bros. v. Berkeley Pump Co.,* 191 F.2d 632, 634 (9th Cir. 1951). The district court made findings as to what the prior art included. Those findings are not clearly erroneous. None of the cited examples of prior art was considered by the examiner. For instance, the 1941 Minter patent, No. 1,251,751, is a device for controlling the fuel-air mixture in airplanes. The district court found that the Minter patent not only discloses the basic relationship between fuel-air ratio and engine exhaust gas temperature, it also teaches a method of using this relationship for automatically controlling fuel mixture by use of a temperature probe in the exhaust gas stream.

■  Absent the presumption, the next question is whether the district court erred in determining obviousness. Whether the subject matter of a patent was obvious is decided by considering the scope and content of the prior art, the

scribed as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

differences between the prior art and the disputed claim, and the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Walker v. General Motors Corp.*, 362 F.2d 56, 59 (9th Cir. 1966). The district court correctly determined that the art of internal combustion engine thermodynamics was the art pertinent to Alcor's patent. Alcor admits that the probes and meters were used in the prior art to measure EGT. It was also textbook knowledge that EGT varies with the fuel-air ratio and peaks at the stoichiometric ratio. In addition, it was known that best power or best economy is achieved by a mixture setting either richer or leaner than the stoichiometric ratio, as represented by peak EGT. Although Alcor's patent does not mention specific relationships, even the exact EGT drop for many engines was known in the prior art, readily available in pilot manuals and test studies.

Moreover, these EGT devices and theories were utilized together in the prior art. EGT probes and indicators were used in testing new airplane engines, both on the ground and in the air. Examples discussed during the trial included the Curtiss-Wright test stand practices in the 1940's and the Lockheed Constellation and Douglas DC-7 in-flight tests in the early 1950's. Under constant conditions the fuel-air mixture was varied and all changes in engine performance noted, including such variables as cylinder head temperature, power (as measured by brake mean effective pressure), fuel consumption and, of course, exhaust gas temperature. Indeed, it was from these tests that graphs such as Diagram I were composed showing the relationships between fuel-air ratio and other variables. These graphs, with discussion of the various relationships, were published in professional journals and utilized in manuals for pilot training such as the Curtiss-Wright manual, *Basic Theory of Operation, Turbo Compound Engine* (1957).

DIAGRAM I

Source: Lycoming Service Instruction No. 10946 (amended).

Any of the dependent variables such as illustrated in Diagram I could be used to set the fuel-air mixture. For example, cylinder head temperature, measured by a probe in the cylinder head, and read on a meter in the cockpit, was used as a rough means of mixture control; however, it was unsuitable because of the time lag between mixture adjustment and change in cylinder head temperature. The graph also shows that the mixture could be adjusted by reference to the power of the engine, which was measured by a device indicating brake mean effective pressure. This method was quite feasible; indeed, it was the primary system of mixture control in large aircraft such as the Lockheed Constellation and Douglas DC-7.

The district court found it a well-known theory in the prior art that fuel-air mixture could be set by reference to

any of the variables charted in Diagram I. The court also found that the Pratt-Whitney handbook, *The Aircraft Engine and its Operation* (1946) and the Curtiss-Wright manual "clearly teach the basic relationship between fuel-air ratio and exhaust gas temperature, including peak EGT, and recognize that it can be used to control the fuel mixture." Further, the court determined that "[f]light tests conducted on the Lockheed Constellation series and Douglas DC–7 in the 1950's and the inventor['s] . . . own tests utilizing EGT probes and temperature gauges in internal combustion engines as early as 1941 utilized the basic relationships between fuel-air ratio and exhaust gas temperature (EGT), including peak EGT, and illustrated that EGT could be used to control the fuel-air mixture." [3]

Beyond bare theory, the practical method of using one of the dependent variables associated with fuel-air mixture to set mixture was well known in the prior art. The mixture control would be adjusted to give a peak parameter reading; the mixture then would be enriched or leaned to achieve a reading having some predetermined relationship to the peak reading. The predetermined relationship is found by reference to a performance graph for the engine such as illustrated in Diagram I. For example, to set an economy mixture according to brake mean effective pressure, the prior art would lean the mixture to peak power and then lean an additional 10% ("10% drop"). Alcor's patented method is simply this same technique using EGT as the reference variable. Thus a witness found to be representative of those skilled in the prior art, Richard Jahnke, testified that Alcor's claimed method would have been obvious. The district court found that Jahnke, in his activities as pilot instructor in the 1940's, gave

pilots training sufficient to enable them, with proper instrumentation, to use EGT rather than brake mean effective pressure to set fuel mixture.

Considering Alcor's claim against the factual findings of the prior art, the district judge did not err in concluding that there was nothing unobvious about the invention to a person having ordinary skill in the art of internal combustion engine thermodynamics. Alcor's claim is thus no more than a new use for an old device. 35 U.S.C. § 100(b); *see generally,* 2 A. Deller, *Walker on Patents* § 124, at 294–99 (2d ed. 1964). There is substantial evidence in the record to support the findings that the theory that EGT could be used to set mixture in a flying aircraft was well known in the art and that the actual method of adopting theory to device was not in the least unusual or surprising. *Cf. Regimbal v. Scymansky,* 444 F.2d 333, 338–40 (9th Cir. 1971). The method was a mechanical application of the methodology of mixture control by reference to a dependent variable. *See Pevely Dairy Co. v. Borden Printing Co.,* 123 F.2d 17, 19 (9th Cir. 1941).

█ Finally, Alcor asserts that the district court erred in not considering such secondary factors as commercial success and recognized need. The district judge, however, adequately discussed these factors and specifically stated that he took them into consideration. Moreover, we note that such secondary considerations cannot make patentable a method which lacks inventiveness. *Hewlett-Packard Co. v. Tel-Design, Inc., supra,* 460 F.2d at 630; *Exer-Genie, Inc. v. McDonald,* 453 F.2d 132, 136 (9th Cir. 1971), *cert. denied,* 405 U.S. 1075, 92 S.Ct. 1498, 31 L.Ed.2d 809 (1972).

Affirmed.

---

**3.** The district court noted that the brake mean effective pressure rather than EGT was used as the reference variable in aircraft such as the Lockheed Constellation because pilots needed a direct power reading for the large turbo-compound engines. (Too much horsepower would have caused engine collapse.) The evidence also indicated that, at that time, EGT probes were short-lived.