686 F.2d 665
 212 U.S.P.Q. 566
 CARSON MANUFACTURING COMPANY, INC., a California
Corporation, Plaintiff-Appellant,
v.
CARSONITE INTERNATIONAL CORPORATION, INC., and High
Performance Composites, Inc., Nevada Corporations,
Defendant-Appellees.
 No. 79-4474.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1981.
Decided Oct. 13, 1981.
 
 Harris Zimmerman, Oakland, Cal., for plaintiff-appellant.
 Vaughn W. North, Sandy, Utah, argued, for defendants-appellees; Thorpe, North, Western & Gold, Sandy, Utah, David D. Harrison, Feix & Harrison, Burlingame, Cal., on brief.
 Before TRASK and BOOCHEVER, Circuit Judges, and CURTIS,* District Judge.
 TRASK, Circuit Judge:
 
 
 1
 This appeal stems from a dispute over appellant Carson Manufacturing Co.'s manufacture and distribution of a highway marker which is very similar to a patented marker manufactured and distributed by appellee Carsonite International Corp. Appellant argues that the court below erred in awarding damage and injunctive relief for patent infringement, trademark infringement, and unfair competition based on a jury verdict of appellant's liability. We reverse.
 
 
 2
 * Both parties identify Schmanski Patent 4,092,081 Claim 1, with dependent Claims 12, 13, 17, and 18; and Claim 20, with dependent Claims 24 and 25; as the claims relevant to the patent infringement issues. On this appeal, appellant contends that none of these claims is entitled to a presumption of validity because some prior art references were not cited to the patent examiner in the initial application. It also asserts that the patent is invalid and, in any event, not infringed. Appellee claims that it adequately disclosed the prior art, and that the jury verdict of infringement is supported by substantial evidence.
 
 
 3
 * Although the ultimate question of patent validity is a legal one, Graham v. John Deere, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966) (quoting A & P Tea Co. v. Supermarket Corp., 340 U.S. 147, 155, 71 S.Ct. 127, 131, 95 L.Ed. 162 (1950)), appellant raises two issues which are relevant to the degree of scrutiny that we should give to the judgment below: whether the Schmanski patent is entitled to a presumption of validity, and whether the patent is a so-called 'combination patent.'
 
 
 4
 * Under 35 U.S.C. Sec. 282, a patent is presumed valid, and the burden of showing invalidity rests with the party challenging the patent. This presumption of validity can be rebutted only by clear and convincing evidence. Saf-Guard Prods., Inc. v. Service Pts., Inc., 532 F.2d 1266, 1271 (9th Cir. 1976), cert. denied, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179; see St. Regis Paper Co. v. Bemis Co., 549 F.2d 833, 838 (7th Cir.), cert. denied, 434 U.S. 833, 98 S.Ct. 119, 54 L.Ed.2d 94 (1977). However, where the obviousness of a patent as compared to the prior art is in issue and the patent applicant fails to disclose relevant prior art, the presumption disappears. Hewlett-Packard Co. v. Tel-Design, Inc., 460 F.2d 625, 628 (9th Cir. 1972); see Kamei-Autokomfort v. Eurasian Automotive Prods., 553 F.2d 603, 605 (9th Cir.), cert. denied, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); Alcor Aviation, Inc. v. Radair, Inc., 527 F.2d 113, 115 (9th Cir. 1975), cert. denied, 426 U.S. 949, 96 S.Ct. 3170, 49 L.Ed.2d 1186 (1976). Nevertheless, the presumption remains intact if the undisclosed prior art is merely cumulative of the cited art. Saf-Guard Prods., Inc. v. Service Pts., Inc., 532 F.2d at 1271 (quoting Schnadig v. Gaines Mfg. Co., 494 F.2d 383, 391 (6th Cir. 1974)).
 
 
 5
 Claims 20, 24, and 25 are clearly not entitled to a presumption of validity, because they were declared invalid by the examiner during the reissue proceedings. Claims 1, 12, 13, 17, and 18, however, were declared valid even after presentation of previously uncited prior art references during those proceedings.
 
 
 6
 Only one prior art reference, the Trelleborg patent, was not cited to the examiner at any stage of the proceedings. However, there is nothing about this reference that is not suggested by one or more of the references that were eventually cited to the examiner at some point in the proceedings. Thus, the Trelleborg patent is merely cumulative of the cited art, and, therefore, Claims 1, 12, 13, 17, and 18 are entitled to a presumption of validity.
 
 2
 
 7
 A combination patent is an invention totally composed of old elements which are combined in an unprecedented manner. See Sakraida v. Ag Pro, Inc., 425 U.S. 273, 280-81, 96 S.Ct. 1532, 1536-37, 47 L.Ed.2d 784 (1976); M-C Inds. v. Precision Dynamics Corp., 634 F.2d 1211, 1213 (9th Cir. 1980); Herschensohn v. Hoffman, 593 F.2d 893, 895 (9th Cir.), cert. denied, 444 U.S. 842, 100 S.Ct. 84, 62 L.Ed.2d 55 (1977). Such patents are subject to a more rigorous test of validity: A combination patent will be upheld only if it produces an 'unusual' or 'surprising' result. M-C Inds. v. Precision Dynamics Corp., supra, 634 F.2d at 1213; Hewlett-Packard Co. v. Tel-Design, Inc., 460 F.2d 625, 629 (9th Cir. 1972); Regimbal v. Scymansky, 444 F.2d 333, 337-40 (9th Cir. 1971).[1] The rationale for heightened scrutiny of combination patents is to ensure that knowledge is not withdrawn from the public domain into the protected monopoly of one whose invention has not really advanced the art. See A & P Tea Co. v. Supermarket Equip. Co., 340 U.S. 147, 152-53, 71 S.Ct. 127, 130-31, 95 L.Ed. 162 (1950). The issue here is whether each element of the Schmanski patent is old in the art.
 
 
 8
 It is evident from the record that each element of the patent is indeed old in the art. The fiberglass formula (Claim 1), the variable EI concept as it relates to driveability and flexibility (Claim 1), installation by means of driveable rigid-body casings (Claims 12 and 13), the marker's shape (Claims 17 and 18), and the longitudinal rib supports (Claim 18), are each suggested by one or more of Humphrey, Schmanski-Rose, Barnett, the German patent, and Trelleborg.
 
 
 9
 Nevertheless, appellee argues that the Schmanski patent should not be considered a combination patent, because it protects a unitary object and not a mechanical or other device composed of discrete component parts. According to appellee, only the latter fall within the definition of a combination patent.
 
 
 10
 The Schmanski marker does indeed consist of a single tangible element. Nevertheless, it does not follow that the patent cannot be considered a combination. The defining language used by the cases does not limit combination patents to devices composed of discrete component parts. See, e. g., Great A & P Tea Co. v. Supermarket Equip. Co., supra, 340 U.S. at 152, 71 S.Ct. at 130 ('an assembly of old elements,' 'unites old elements with no change in their respective functions'); Sakraida v. Ag Pro, Inc., supra, 425 U.S. at 280-81, 282, 96 S.Ct. at 1537 (combination of old elements); M-C Inds. v. Precision Dynamics Corp., supra, 634 F.2d at 1213 ('combines old elements in a different way'); Herschensohn v. Hoffman, supra, 593 F.2d at 895 ('All . . . elements are old in the art'). But see SSP Agricultural v. Orchard-Rite, Ltd., 592 F.2d 1096, 1101 (9th Cir. 1979) ('mechanical' combination of old elements). Moreover, Schmanski combines a number of abstract teachings and concepts which are individually old in the art. This court has long held that a patent need not be exclusively composed of tangible elements to be considered a combination. Hewlett-Packard Co. v. Tel-Design, Inc., supra, 460 F.2d at 629-30 & n.10; see Santa Fe-Pomeroy v. P & Z Co., 569 F.2d 1084, 1091 (9th Cir. 1978); Griffith Rubber Mills v. Hoffar, 313 F.2d 1, 3 (9th Cir. 1963).
 
 
 11
 The cases compel the conclusion that whether a patent is a combination patent depends, not on the unitary or component nature of the patented invention or on the tangibility of its elements, but instead on whether each element of the invention is old in the prior art. Under this analysis, we find the Schmanski patent to be a combination patent. Accordingly, we will uphold it only if we find that it produces an unusual or surprising result.
 
 B
 
 12
 Appellant argues that the Schmanski patent is invalid because of obviousness, anticipation, overbreadth, and fraud. We find it necessary to consider only the first argument.
 
 
 13
 Nonobviousness is a statutory requirement of patentability. See 35 U.S.C. Sec. 103. The question of a patent's obviousness should be decided against the background of three factual determinations: (1) the scope and content of the prior art, (2) differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the pertinent art. Graham v. John Deere Co., supra, 383 U.S. at 17, 86 S.Ct. at 693.[2] These factors were drawn from language in the legislative history of section 103:
 
 
 14
 An invention which has been made, and which is new in the sense that the same thing has not been made before, may still not be patentable if the difference between the new thing and what was known before is not considered sufficiently great to warrant a patent.
 
 
 15
 .............................................................
 
 
 16
 ...................
 
 
 17
 * * *
 
 
 18
 If this difference is such that the subject matter as a whole would have been obvious at the time to a person skilled in the art, then the subject matter cannot be patented.
 
 
 19
 Graham v. John Deere Co., supra, 383 U.S. at 14, 15, 86 S.Ct. at 692 (quoting S.Rep.No.1979, 82d Cong., 2d Sess. 6 (1952); H.R.Rep.No.1923, 82d Cong., 2d Sess. 7 (1952)). The finder of fact must ascertain the state of the prior art, the differences between the disputed patent and the prior art, and the level of ordinary skill in the art. The ultimate question, however, is one of law: Are the differences of such magnitude that they would not have been evident at the time of invention to one possessed of ordinary skill in the art?
 
 
 20
 The jury did not render a special verdict disclosing specific findings on the Graham inquiries, so we do not know how the jury arrived at its conclusion that the Schmanski patent was valid. We need not review the record, however, because we conclude that the Schmanski patent is obvious as a matter of law. Every element of the patent is old in the art. Thus, the patented combination of these elements--a driveable-flexible marker--must yield an unusual or surprising result to be upheld. We find it impossible to maintain that, in light of the teaching of the German patent, it would not have occurred to an inventor familiar with and skilled in the pertinent art to construct the Humphrey marker of reinforced fiberglass. Similarly, it is an obvious innovation, in view of the teachings of Trelleborg and Humphrey, to remove the longitudinal rib and accentuate the curve of the Rose-Schmanski 'T' marker.[3] Either innovation would yield a driveable-flexible marker virtually identical to the Schmanski marker.
 
 
 21
 This evidence of obviousness is sufficiently strong to overcome the presumption of validity properly accorded to Claims 1, 12, 13, 17, and 18. The Schmanski patent is neither an unusual nor surprising advance in the art, and we accordingly hold it invalid because of obviousness. The verdict of patent infringement is hereby reversed.
 
 II
 
 22
 Appellant claims that there is insufficient evidence to support the jury verdict that appellant is liable for violations of sections 32 and 43(a) of the Lanham Trademark Act, 15 U.S.C. Secs. 1114, 1125(a).[4] In issue here are the names or marks under which appellant and appellee market their respective highway markers. The question that we must decide is whether the marks create a likelihood of confusion such that 'consumers viewing [one] mark would probably assume that the product it represents is associated with the source of a different product or service identified by [the other] mark.' Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 443 (9th Cir. 1980) (quoting Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1229 (3d Cir. 1978); accord Jockey Club, Inc. v. Jockey Club of Las Vegas, Inc., 595 F.2d 1167, 1168 (9th Cir. 1979) (quoting Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 151-52 (9th Cir. 1963)). Though itself a question of law, this determination is based on six factual inquiries: (1) the strength of the allegedly infringed mark; (2) the similarity in appearance, sound and meaning of the disputed marks; (3) the class of goods in question; (4) marketing channels; (5) evidence of actual confusion; and (6) evidence of the intent of the party using the allegedly infringing mark. Id.; see Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., supra, at 444.
 
 
 23
 (1) Carsonite is a fictitious name that does not correspond to anything in the real world. Consequently, it is sufficiently 'fanciful and distinctive' to receive the greater protection accorded strong marks. See Jockey Club, Inc. v. Jockey Club of Las Vegas, Inc., supra, 595 F.2d at 1168.
 
 
 24
 (2) The parties differ on names of the marks in issue. Appellant contends that its mark is 'Roadmarker,' and that appellee's mark is 'Carsonite.' Appellee contends that its mark is 'Carsonite Roadmarker,' and that appellant's mark is 'Carson Roadmarker.'
 
 
 25
 'Roadmarker' is at best a descriptive term that is not protectible as a trademark in the absence of evidence of secondary meaning. Appellee has supplied no such evidence. Indeed, its registered trademark is 'Carsonite,' and not 'Carsonite Roadmarker.' Moreover, appellant markets its highway marker as 'Roadmarker,' and not as 'Carson Roadmarker.' 'Carson' appears in appellants advertising only as part of the designation of appellant's company--'Division/Carson Mfg. Company.' The record shows that 'Carson Mfg. Company' is a bona fide business name that appellant has used for nearly 100 years. Finally, appellants use the distinctive 'boomerang' logo of Carson Mfg. Company in marketing their 'Roadmarker', whereas no logo at all appears on appellee's advertising. We conclude that the marks in issue are 'Carsonite' and 'Roadmarker.' These marks are not at all similar.
 
 
 26
 (3) The products denominated by the respective marks are virtually identical--driveable-flexible highway markers constructed of reinforced fiberglass.
 
 
 27
 (4) The manner in which markers are marketed tends to reduce the possibility of confusion. Orders are placed direct to the manufacturer; there is no central retail/wholesale outlet where a buyer could go and purchase appellant's product thinking it was appellee's. In bidding for state highway contracts, each manufacturer usually submits its own bid, and each such bid is generally given a separate file number.
 
 
 28
 (5) Appellee cites as evidence of confusion a California Department of Transportation (CalTrans) memo issued to clarify that appellee's marker was CalTrans-approved, whereas appellant's was not. It also relies on an order for 'Carsonite Roadmarkers' which was erroneously placed with appellant. Appellant concedes that some confusion was evident in the several months immediately following its entry into the market, but that such confusion quickly dissipated once appellant established itself as a competitor to appellee. Appellee cites no examples of confusion that occurred significantly after appellant's initial entry into the market.
 
 
 29
 (6) There is no evidence of intent that appellant intended to confuse buyers and trade off appellee's goodwill when it chose the name for its marker. When orders for 'Carsonite Roadmarkers' were placed with it rather than with appellee, appellant explained to the buyers that the marker it sold was not the 'Carsonite Roadmarker.' According to appellant, the orders were filled only after the buyers understood that there were two different companies and two different products.
 
 
 30
 As a matter of law, we conclude that appellant is not liable to appellee under either section 32 or section 43(a). The evidence is simply insufficient to support the conclusion that a violation occurred. It is clear from the record that neither the marks themselves (section 32) nor the manner in which the underlying products are marketed (section 43(a)) create the likelihood of confusion necessary for liability under the Lanham Act. Cf. Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., supra (holder of registered mark 'ALPHA' given no relief under Lanham Act for defendant's use of 'ALPHA STEEL TUBE' or 'ALPHA STEEL TUBE & SHAPES'). The verdicts of liability under sections 32 and 43(a) are hereby reversed.
 
 
 31
 The judgment is REVERSED.
 
 
 
 *
 Honorable Jesse W. Curtis, Senior United States District Judge for the Central District of California
 
 
 [1]
 Sometimes this test is referred to as 'synergism'--i. e., the whole must exceed the sum of its parts. See, e. g., Herschensohn v. Hoffman, supra, 593 F.2d at 897 n.1 (quoting Astro Music, Inc. v. Eastham, 564 F.2d 1236, 1238 (9th Cir. 1977)); Hewlett-Packard Co. v. Tel-Design, Inc., supra, 460 F.2d at 629
 
 
 [2]
 Graham also states that 'secondary considerations' such as 'commercial success, long felt but unsolved needs, failure of others, etc.' may be relevant as indicia of obviousness. 383 U.S. at 17-18, 86 S.Ct. at 694. See also Photo Elect. Corp. v. England, 581 F.2d 772, 782 (9th Cir. 1978) (that a patented invention was copied is evidence of nonobviousness). The general (though by no means exclusive) pattern in this circuit has been to consider secondary indicia only when the issue of obviousness is still in doubt after consideration of the three primary determinations. See, e. g., SSP Agricultural v. Orchard-Rite, Ltd., supra, 592 F.2d at 1101; Kamei-Autokomfort v. Eurasian Automotive Prods., supra, 553 F.2d at 606; Hewlett-Packard Co. v. Tel-Design, Inc., supra, 460 F.2d at 630 (9th Cir. 1966); Walker v. General Motors Corp., 362 F.2d 56 at 60. But see Saf-Guard v. Service Pts., Inc., supra, 532 F.2d at 1272-73 (court considered secondary factors even though obviousness was clear under primary determinations)
 
 
 [3]
 This innovation was suggested by appellee's own advertisements
 
 
 [4]
 Appellee also asserts that '[o]ther general allegations of unfair competition were made and were proven at trial [which] went beyond section 43(a).' This is simply untrue. No federal common law or pendant claims were alleged by appellee in its counterclaim; the sole jurisdictional bases plead for the claim were federal statutes involving patent and trademark infringement. Because appellee's asserted unfair competition claims were suggested for the first time on appeal, they cannot serve as a basis for upholding the jury verdict. Therefore, we decline to consider them