MONTE CARLO SHIRT, INC., a
California Corporation,
Plaintiff-Appellant/Cross-Appellee,

v.

DAEWOO INTERNATIONAL (AMERI-
CA) CORPORATION, a New York Cor-
poration, and Daewoo Industrial Co.,
Ltd.,    Defendants-Appellees/Cross-Ap-
pellants.

Nos. 81–5908, 81–5972.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1982.

Decided June 8, 1983.

Hillel Chodos, Beverly Hills, Cal., for plaintiff-appellant.

Don A. Proudfoot, Graham & James, Los Angeles, Cal., for defendants-appellees.

Before SNEED and ALARCON, Circuit Judges, and COPPLE *, District Judge.

SNEED, Circuit Judge:

## I.

### FACTS

Monte Carlo Shirt, Inc., a New York corporation, contracted with Daewoo Industrial Company, Ltd. (Daewoo), a South Korean corporation, to purchase 2400 dozen men's dress shirts manufactured to its specifications and bearing its label. Monte Carlo rejected the shirts after they arrived in this country because the documents necessary to clear the shipment arrived too late for Christmas sales. The American subsidiary of Daewoo, Daewoo International (America) Corp. (Daewoo America), purchased the shirts from Daewoo and sold them without Monte Carlo's permission to discount retailers, with Monte Carlo labels and polybags

---

* Honorable William P. Copple, United States District Judge for the District of Arizona, sitting by designation.

still intact. In response Monte Carlo sued Daewoo[1] for breach of contract, common-law trademark and tradename infringement, interference with business, conversion, violation of a provision of the California Unfair Practices Act (CUPA), Cal.Bus. & Prof.Code § 17043, and violation of the Lanham Act, 15 U.S.C. §§ 1051–1127. Jurisdiction was predicated on diversity, 28 U.S.C. § 1332, as well as the Lanham Act, 15 U.S.C. § 1121, and the trademark and unfair competition provisions of 28 U.S.C. § 1338. Daewoo cross-complained for breach of contract.

Monte Carlo tried its case before a jury. The interference with business and conversion claims were apparently abandoned at trial and are not on appeal. The jury entered a verdict for Monte Carlo on the breach of contract claim and awarded it $79,073 for lost profits. Monte Carlo also prevailed on the trademark claim, for which it received general compensatory damages of $1,582,735, special compensatory damages of $70,048, and punitive damages of $3,000,000. The jury denied relief on the claim under CUPA, and the court directed a verdict for Daewoo on the Lanham Act claim.

Daewoo then moved for a new trial or, in the alternative, for judgment notwithstanding the verdict. The court refused to order a new trial on the breach of contract claim, but granted the motion on the remaining claim of trademark infringement. The court based its decision on its belief that the jury was misinstructed on the elements of trademark infringement and on a variety of errors affecting the computation of damages. The new trial was never held. Daewoo moved for summary judgment and the court granted its motion, holding that "[t]he sale of the Monte Carlo shirts with the Monte Carlo labels intact could not as a matter of law deceive or confuse the public

concerning the source and origin of the shirts." (citation omitted).

Monte Carlo appeals from the order partially granting a new trial on the trademark infringement claim and from the subsequent grant of summary judgment against it on that issue.[2] Daewoo cross-appeals the denial of a new trial on the breach of contract claim. We affirm the dispositions by the trial court. Because we accept the court's view that no trademark claim could be shown on these facts, neither in the first trial nor in a new one, we need not address the propriety of the grant of a new trial. We discuss only the issuance of summary judgment on the trademark claim and the denial of a new trial on the breach of contract claim.

## II.

## TRADEMARK INFRINGEMENT

■ The first issue presented on appeal is whether the district court was correct in holding as a matter of law that Daewoo's sale of Monte Carlo-labeled shirts could not constitute actionable trademark infringement. The district court's grant of summary judgment will be affirmed only if there was no genuine issue of material fact and the moving party was entitled to prevail as a matter of law. *Barona Group of Capitan Grande Band v. Duffy,* 694 F.2d 1185, 1187 (9th Cir.1982); *Heiniger v. City of Phoenix,* 625 F.2d 842, 843 (9th Cir.1980). There was no genuine dispute over the material facts of this case. We do not, however, engage in de novo review in deciding whether Daewoo was entitled to prevail, because Monte Carlo's unregistered trademark is afforded protection only under California law. Our review of the district court's interpretation of state law in diversity cases is limited: we may not overrule the court unless it is

---

1. Defendants will hereinafter be referred to collectively as Daewoo.

2. Monte Carlo's notice of appeal also included the CUPA and Lanham Act claims. Monte Carlo does not argue either issue in its brief, however, and we do not consider them here. Fed.R.App.P. 28(a); *Laborde v. Regents of*

*Univ. of Cal.,* 686 F.2d 715, 717 n. 2 (9th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983); *see Simpson v. Union Oil Co.,* 411 F.2d 897, 900 n. 2 (9th Cir.), *rev'd on other grounds,* 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed.2d 13 (1969); *Peck v. Shell Oil Co.,* 142 F.2d 141, 143 (9th Cir.1944).

"clearly wrong." *Young v. Reynolds Metals Co.,* 685 F.2d 1091, 1092 (9th Cir.1982); *Washington ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 n. 1 (9th Cir.1980); *Gee v. Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir. 1980).

The question of state law facing the district court was whether an action would lie in trademark for Daewoo's unauthorized sale of genuine Monte Carlo shirts. Under the circumstances of this case both buyers at the discount retail level (consumers) and other retailers reasonably could assume that Monte Carlo had sold its shirts directly or indirectly to the discount retailers. Any such assumption would be erroneous under the facts of this case. The issue, therefore, is whether Daewoo's unauthorized sale, which made any such erroneous assumption possible, constitutes a *trademark* violation.

We think not. No doubt such an erroneous assumption could cause injury to Monte Carlo which, when caused by another, might constitute a claim in contract or tort. Monte Carlo, however, chose to forego its opportunity to recover for such injury under a contract theory, and it also did not pursue its claims of interference with business and conversion. On the facts of this case, it has not established that such injury can be alleviated under trademark law, although it must be admitted that neither Monte Carlo nor Daewoo has produced persuasive authority pointing either way.[3]

The California courts have not passed on the viability of a trademark claim for the unauthorized sale of a genuine product. Nonetheless there is sufficient authority for us to conclude that the district court was not clearly wrong in finding that

---

**3.** The court in *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 408 F.Supp. 1219 (D.Col.1976), *aff'd,* 561 F.2d 1365 (10th Cir. 1977), *cert. denied,* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978), found an infringement in the use of a similar trademark on two different products. *A. Bourjois & Co. v. Katzel,* 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923), a case closer to the facts of this case, still did not involve the plaintiff's "genuine" goods but rather goods produced by the owner of plaintiff's trademark in a foreign country. The Court, in finding for the plaintiff, noted the protections accorded the registered trademark under the Act of Feb. 20, 1905, ch. 592, § 10, 33 Stat. 727, and the harm the plaintiff could suffer from inability to control the quality of the foreign producer's goods. *Id.* at 691–92, 43 S.Ct. at 245. Although *Ritz Cycle Car Co. v. Driggs-Seabury Ordnance Corp.,* 237 F. 125 (S.D.N.Y.1916), an early common-law trademark case, did find an infringement when the manufacturer marketed goods rejected by the trademark owner, it is not sufficient authority to overturn the cases requiring a likelihood of confusion. *See infra,* p. 1058.

Monte Carlo also cites a line of early cases, beginning with the nineteenth-century case of *Weinstock, Lubin, & Co. v. Marks,* 109 Cal. 529, 42 P. 142 (1895), in an attempt to show that damages for loss of good will may be awarded even without consumer deception as to the nature of the product. Each of these cases involved separate products, however, with the concomitant danger of injury from inferior products. The cases do not speak to the possibility of infringement when the genuine product is sold. In contrast, there are other circumstances in which a competitor is permitted to benefit from the good will of the trademark owner. For instance, a manufacturer can market a duplicate of a nonpatented trademarked product and inform the public that it is identical to the trademarked product. *Smith v. Chanel, Inc.,* 402 F.2d 562, 563–66 (9th Cir. 1968), *cited in Saxony Prods., Inc. v. Guerlain, Inc.,* 513 F.2d 716, 722 (9th Cir.1975). The manufacturer is required to distinguish itself from the trademark owner, but that is presumably to warn the consumer of potential variations in the quality of goods. *Cf. AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 353–54 (9th Cir.1979) (even if alleged infringer's goods are of equal quality, threat to owner exists in lack of assurance of continued quality). Such a danger, of course, is not present here. *See infra* note 5.

Some of Daewoo's cases are similarly unpersuasive. Those cases involving use of a registered trademark on repackaged products, *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924), or repaired products, *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947), do indicate that a subsequent legal owner who sells a trademarked product may be protected from attack by the trademark owner, at least under federal law. They do not, however, address the central question in this case, namely, whether the unauthorized sale of a genuine, unaltered product initially manufactured for the plaintiff can form the subject of a trademark claim. In such a case there can be no deception as to the nature of the product. Buyers of the product, although perhaps mistaken about how the product came into the retailer's hands, get precisely what they bargain for.

Monte Carlo had no action in trademark. A showing of likely buyer confusion as to the source, origin, or sponsorship of goods is part of a cause of action for infringement of a registered trademark. *Carson Manufacturing Co. v. Carsonite International Corp.*, 686 F.2d 665, 669–70 (9th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983); *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 821–22 (9th Cir.1980); *Lindy Pen Co. v. Bic Pen Corp.*, 550 F.Supp. 1056, 1060–61 (C.D.Cal.1982). This requirement applies to common-law trademark infringement claims brought under California law. *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir.1981); 7 B. Witkin, *Summary of California Law, Equity,* §§ 70, 74 (8th ed. 1974).[4] The possibility of confusion is one that exists between distinct products that are similar in appearance and are marked deceptively. Accordingly, the injury that is remedied by the trademark cause of action is public confusion as to the source of the goods. *Shakey's Inc. v. Covalt*, 704 F.2d 426 (9th Cir. 1983); *Carson Manufacturing Co.*, 686 F.2d at 670–71; *North Carolina Dairy Foundation, Inc. v. Foremost-McKesson, Inc.*, 92 Cal.App.3d 98, 110, 154 Cal.Rptr. 794, 801 (1979).

■ No such confusion was possible in this case. The goods sold by Daewoo were not imitations of Monte Carlo shirts; they were the genuine product, planned and sponsored by Monte Carlo and produced for it on contract for future sale. The shirts

were not altered or changed from the date of their manufacture to the date of their sale.[5] Their source was Monte Carlo; the absence of Monte Carlo's authorization of the discount retailers to sell does not alter this. Admittedly the law of trademark has extended well beyond its origin as a remedy for "passing off," but Monte Carlo has not demonstrated that it should reach as far as the facts of this case. *Cf. DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 622 n. 1 (2d Cir.1980) (noting in dictum that it would be anomalous if "a trademark infringement action would lie where the [defendant's product] is in fact genuine and not spurious"). The district court was not clearly wrong in granting Daewoo's motion for summary judgment.

### III.

### BREACH OF CONTRACT

■ Daewoo cross-appeals on the breach of contract claim, arguing that the district court misled the jury by giving conflicting instructions. Daewoo's objection was both timely and adequate to make the court "fully aware" of its position, thus satisfying Fed.R.Civ.P. 51. *See Brown v. Avemco Investment Corp.*, 603 F.2d 1367, 1370–71 (9th Cir.1979); *see also Kramas v. Security Gas & Oil Inc.*, 672 F.2d 766, 768–69 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).

4. Thus, the state has expressly waived this requirement in the exceptional case where it has sought to provide relief for trademark infringement in the absence of confusion. *See* Cal.Bus. & Prof.Code § 14330 (injunctive relief for trademark claims authorized even in absence of confusion to source of goods).

5. Monte Carlo in its closing brief argues that it could not determine the quality of the shirts manufactured by Daewoo without inspecting them on delivery and supervising their distribution. Its allegations are not supported by the record. Al Kaufler, Monte Carlo's president, testified to the many steps he took to ensure the quality of his product before contracting with Daewoo. Before placing his order, Kaufler visited Korea and thoroughly investigated Daewoo's production capabilities. He issued detailed instructions on the size specifications,

measurements, and styling of the shirts—the very factors that he claimed established Monte Carlo's quality to the consuming public and distinguished its shirts from those of its competitors. Kaufler was also able to distinguish the quality of the various manufacturers working for Monte Carlo at this stage—before receipt of the goods. Once the shirts were produced, they were given the Monte Carlo logo, packed in polybags, and boxed. Kaufler testified that customers generally bought prepackaged shirts which they didn't try on until they went home. Monte Carlo's concerns about quality control are also suspect in light of its conceded willingness to have taken the shirts for spring delivery, and the absence of any complaint that it was injured by the quality of Daewoo's product.

Although Daewoo has preserved its objections to the jury instructions, it has not established a basis for reversal. The court instructed the jury on Daewoo's potential liability on both a contract theory and for violation of Cal.Com.Code § 2504. Daewoo challenges the part of the court's contract charge that it labels a "perfect tender" instruction. This instruction was that:

A buyer has no duty to accept goods or pay for them unless there has been a proper tender of delivery.

If the tender of delivery fails in any respect to conform to the contract, the buyer may reject the goods.

The court added that Monte Carlo could not recover unless it was injured by Daewoo's breach. This was followed by what Daewoo concedes was a proper instruction under section 2504, which requires the manufacturer to deliver the goods to a carrier, make a reasonable contract for delivery, and tender any document necessary for the buyer to obtain possession of the goods.[6] A violation of section 2504 is actionable only if "material delay or loss" results. Daewoo, which believes that section 2504 preempts other contract claims, argues that the initial "perfect tender" instruction would permit the jury to hold it liable for its conceded one-day delay in shipment even if it did not violate section 2504.

We disagree. Assuming, *arguendo,* that section 2504 overrides the parties' contractual obligations,[7] there is no danger that Daewoo could be held liable for a violation that did not cause "material delay or loss." A limitation equivalent to this requirement was imposed on contractual recovery when the court told the jury that for Monte Carlo to recover, it must have "established that it was damaged by defendants' breach." The court also emphasized that all elements of the contract claim, including causality, had to be proven by a preponderance of the evidence, and that the fact that Monte Carlo suffered a loss did not in and of itself constitute a breach. Considering these instructions as a whole, as we must, *see Seltzer v. Chesley,* 512 F.2d 1030, 1035 (9th Cir.1975), this standard of causality is no less stringent than one of material delay. Furthermore, if late shipment did damage Monte Carlo, there would be an actionable breach of section 2504. On the same reasoning, any failure to tender documents that formed an actionable breach of contract would also violate section 2504. There is no merit to Daewoo's objection to the jury instruction.

The judgment of the district court is affirmed.

AFFIRMED.

---

**6.** Section 2504 provides in part:

Shipment by Seller. Where the seller is required or authorized to send the goods to the buyer and the contract does not require him to deliver them at a particular destination, then unless otherwise agreed he must

(a) Put the goods in the possession of such a carrier and make such a contract for their transportation as may be reasonable . . .; and

(b) Obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by usage of trade;

. . . .

Failure to . . . make a proper contract under paragraph (a) is a ground for rejection only if material delay or loss ensues.

**7.** Because the requirement of causality is at least as stringent as that of "material delay or loss," we need not decide whether the latter in fact governs recovery for the late shipment. We do note that § 2504 regulates the manner of shipment only "unless otherwise agreed." If taken literally this qualification would indicate that Daewoo's contractual shipping date was not overridden by § 2504. *But see Harlow & Jones, Inc. v. Advance Steel Co.,* 424 F. Supp. 770, 775 (E.D.Mich.1976) (shipment contract means "that the seller himself is not required to ship or deliver the goods under the terms and dates otherwise provided; rather, the seller is obliged to make a proper contract with his carrier for timely shipment or delivery . . ."). If the literal reading of § 2504 is correct, the court committed no error by instructing the jury on both contract and statutory claims.